# United States District Court
## for the Northern District of Oklahoma

---

Case No. 24-cr-336-JDR

---

United States,

*Plaintiff*,

*versus*

Michael Brandon Williams,

*Defendant.*

---

## OPINION AND ORDER

---

While waiting in the school pickup line on September 26, 2024, Defendant Michael Brandon Williams allegedly displayed a fake law enforcement badge and told another parent in the pickup line to move her car forward. The parent called 911, and the Bixby Police Department arrived at the school to investigate. Following a brief investigation at the scene, the police arrested Mr. Williams for an unspecified charge of "obstruction." Dkt. 41-3 at 5 (¶ 10). After the arrest, BPD searched Mr. Williams's car and found a dash camera, light bar, two fake badges, and a pair of handcuffs. Over a week later, an FBI task force officer presented an application for a warrant, supported by his affidavit, to search Mr. Williams's home. Nearly two weeks after receiving the warrant, the FBI and task force officers searched Mr. Williams's house and seized several firearms, ammunition, tactical vests, a body camera, and a laptop. Mr. Williams was later charged with violating 18 U.S.C. §§ 912, 922(g)(1), and 924(a)(8). Dkt. 11. Mr. Williams challenges the validity of the warrant and asks the Court to suppress the evidence seized during the search. Dkt. 41. Mr. Williams's motion to suppress is granted.

No. 24-cr-336

## I.

The Fourth Amendment guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A search warrant may authorize the search of a suspect's home if there is probable cause to believe that the search will yield (1) evidence of a crime; (2) contraband, fruits of crime, or other items illegally possessed; (3) property designed for use, intended for use, or used in committing a crime; or (4) a person to be arrested or a person who is unlawfully restrained. Fed. R. Crim. P. 41(c), (d). A magistrate judge issuing a search warrant must find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Court must "afford great deference to a magistrate's finding of probable cause," and should only suppress evidence seized during an authorized search "if the affidavit supporting the warrant application provides 'no substantial basis for concluding that probable cause existed.'" *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. And critical to this case, there must be "a nexus between suspected criminal activity and the place to be searched." *United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009) (citing *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990)). "Whether a sufficient nexus has been established between a defendant's suspected criminal activity and his residence thus necessarily depends upon the facts of each case." *Id.* at 1279 (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). In determining whether a nexus exists, the Court can consider (1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence. *Id.* (citing *Anthony v. United States*, 667 F.2d 870, 874 (10th Cir. 1981); *United States v.*

No. 24-cr-336

*Rahn*, 511 F.2d 290, 293 (10th Cir. 1975)). "[A] sufficient nexus is established once 'an affidavit describes circumstances which would warrant a person of reasonable caution' in the belief that 'the articles sought' are at a particular place." *Id.* at 1279 (quoting *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars ($149,422.43) in U.S. Currency*, 965 F.2d 868, 874 (10th Cir. 1992)).

Mr. Williams argues that the affidavit for the search warrant fails to satisfy the nexus requirement. Specifically, he contends that the affidavit "never describes circumstances which would warrant a person of reasonable caution to believe either: that [items listed in the application][1] would be in Mr. Williams'[s] home, or that such items are connected to the suspected criminal activity." Dkt. 41 at 6. In the affidavit, Task Force Officer Robert Heidlage describes his education, experience, and training. Dkt. 41-3 at 2-3. Under the "Probable Cause" heading, Officer Heidlage recounts the events that allegedly took place on September 26, 2024, in the school pickup line as reported by BPD. *Id.* at 4-5. Officer Heidlage notes that the fake badges that officers seized that day "appear[ed] to be commercially produced and not home-made." *Id.* at 5. He concludes that "[b]ased on [his] training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 18 U.S.C. § 912 (False Impersonation of a Federal Officer or Employee) have been committed, and evidence of these crimes … are located in medium maintained in the TARGET RESIDENCE …." *Id.* at 4.[2] But the affidavit never sets forth those "facts."

---

[1] Attachment B of the application lists the following items to be seized from Mr. Williams's home: any law enforcement equipment or insignia, any cellphones or electronic devices, credit card information, records evidencing occupancy or ownership of the premises, chargers for the electronic devices, and any data or materials establishing ownership, use or control of electronics seized. Dkt. 41-2 at 4-6.

[2] The remainder of the affidavit is wholly focused on the capabilities of electronic devices, such as storage and transmission of digital files, with which Officer Heidlage has experience. Dkt. 41-3 at 7-18. And within this portion of the affidavit, Officer Heidlage concludes that "there is probable cause to believe records or images relevant to the ongoing

No. 24-cr-336

Although the affidavit provides a connection between Mr. Williams and his residence,[3] it does not provide any facts which would connect Mr. Williams's *criminal activity*—using a fake badge on September 26 in the school pickup line—to his home. *See, e.g., United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) (holding that the affidavit must establish a nexus between the place to be searched and the criminal activity). The crime of impersonating a federal officer was complete at the pickup line, and all evidence regarding the crime was presumably found there. There is nothing in the affidavit to suggest that evidence of the suspected crime, items illegally possessed by Mr. Williams, or items Mr. Williams intended to use to commit a crime would be found in his home.

The most glaring failure of the affidavit is the lack of any factual basis to support a conclusion that the items to be seized (Attachment B) could actually be found at Mr. Williams's house. A typical warrant affidavit will provide a factual basis explaining why the items to be seized are likely to be found at the place to be searched. Before the Court can authorize federal agents to walk through the front door of a person's house to search it without their permission, the applicant for the warrant must show a connection between an alleged crime and the place to be searched and must show that the items to be seized are likely to be there. The affidavit here misses that mark; in fact, it doesn't get close to hitting the target.

The affidavit discusses the completed, alleged crime of impersonating a federal officer. It does this by reciting the facts developed by the BPD officers. The affidavit discusses at length how to search computers and the special challenges faced by law enforcement when confronted with the search of

---

investigation will be stored on said computer or storage medium …." *Id.* at 9. But Officer Heidlage never states what those "records or images" might be or why they will be found in Mr. Williams's home.

[3] The BPD report identified Mr. Williams's address and on October 1, 2024, federal agents "conducted surveillance at that location and observed" the vehicle Mr. Williams was driving on the date of the alleged crime. Dkt. 41-3 at 7.

No. 24-cr-336

electronic devices. But the affidavit never tells the magistrate judge why the location to be searched is likely to have the items to be seized, and for this reason the affidavit fails to support a finding of probable cause. The affidavit fails to establish any link between the crime under investigation and the location to be searched. If the Fourth Amendment only required a warrant to provide a list of items to be seized, leaving the judge to fill in the necessary connections or inferences to be drawn from the facts to support a search of a home, the Fourth Amendment's requirement that search warrants be supported by probable cause would be meaningless.

The Government argues that the fake badges seized were likely commercially produced, and that evidence of Mr. Williams's purchase of the badges would likely be found on electronic devices within his home. Dkt. 42 at 4. The affidavit, however, says nothing about purchases of fake badges or the likelihood of finding evidence of their purchase. Regardless, whether Mr. Williams purchased or manufactured the badges is not relevant to any of the elements the Government would have to prove at trial to establish that Mr. Williams committed the crime of impersonating a federal officer. *See* Tenth Circuit Pattern Jury Instruction 2.40.

The Government next argues that "[i]t would have [been] unreasonable to conclude that the illegal items located on Williams during a chance encounter with law enforcement would constitute the totality of all such items in his possession," but the affidavit never says *why*. Dkt. 42 at 4-5. The government suggests that "[a] similar false conclusion would be that a large amount of narcotics found along with indicia of drug trafficking during a traffic stop constitutes all of the illegal narcotics involved in the drug trafficking operation." *Id.* at 5. But Tenth Circuit "precedent puts drug trafficking in a special class of crimes" for which it does not require "particular facts to support the inference that a drug trafficker keeps his supply at his residence." *United States v. Mora*, 989 F.3d 794, 801 (10th Cir. 2021); *United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009).

No. 24-cr-336

In *Mora*, the defendant was suspected of illegally smuggling people across the border when undocumented individuals were seen exiting his tractor trailer behind a supermarket. 989 F.3d at 797. None of the individuals or witnesses "suggested that the driver, or anyone else, took any passengers to another location." *Id.* The Government followed the defendant to his home and later obtained a warrant to search the home for evidence of alien smuggling. *Id.* at 798. The Tenth Circuit held that "[a]lthough the totality of the circumstances established probable cause that Defendant engaged in alien smuggling, the government failed to articulate how evidence of alien smuggling justified the search of his home." *Id.* at 801. The Court specifically rejected the Government's comparison of the crime to drug trafficking and held that "evidence that Defendant engaged in alien smuggling does not categorically or independently establish a nexus to his home under our precedents—as would evidence of drug trafficking." *Id.*

Like the affidavit in *Mora*, this affidavit failed to articulate how evidence of impersonating a federal officer justified the search of Mr. Williams's home. Further, the Government does not point to any authority which considers the crime of impersonating a federal officer in the same special class of crime as drug trafficking for purposes of the probable cause analysis. The fact that there was probable cause that Mr. Williams was guilty of impersonating a federal officer alone is not probable cause to search his home.

Although the Tenth Circuit recognizes that "courts may properly rely on an officer's experience in finding probable cause," *Gonzales*, 399 F.3d at 1231, the affidavit is devoid of any facts regarding Officer Heidlage's experience to support the inference that those who impersonate federal officers in their cars keep additional evidence of these types of crimes or other illegal items in their homes. *Cf. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars in U.S. Currency*, 965 F.2d at 874 (relying on officer's experience that drug dealers often keep records and transaction information at their residence). The only information provided in the affidavit

6

No. 24-cr-336

was a summary of the alleged criminal activity on September 26, a general overview of Officer Heidlage's experience, and his knowledge regarding the search and seizure of electronic devices. The affidavit did not establish that Officer Heidlage had specific knowledge of the alleged crime of impersonating a law enforcement officer. The reasonable inference based on the affidavit is that Mr. Williams stored the items relevant to the suspected crime in his car, not his home.

Finally, the Government asks the Court to conclude that the means are justified by the ends because "[t]he search of the house authorized by the warrant did, in fact, reveal further evidence of the impersonation of law enforcement." Dkt. 42 at 5. But concluding that a search was reasonable merely because the items listed in the warrant were found would render the Fourth Amendment meaningless. The Government was required to establish probable cause *before* searching Mr. Williams's home. The affidavit failed to establish a required nexus between Mr. Williams's alleged criminal activity and his home, and thus the warrant was not supported by probable cause.

## II.

Even if a warrant is not supported by an affidavit establishing probable cause, the seized evidence need not be suppressed if the officer executing the warrant acted in good faith. Whether a warrant was executed in good faith is "an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the [exclusionary] rule were violated by police conduct." *Illinois v. Gates*, 462 U.S. 213, 223 (1983) (collecting cases). The affidavit supporting a warrant must provide more than mere "'suspicions, beliefs, or conclusions,'" and must provide "some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. Chambers*, 882 F.3d 1305, 1311 (10th Cir. 2018) (quoting *United States v. Roach*, 582 F.3d 1192, 1204-05 (10th Cir. 2009)). "[L]aw enforcement officials are presumed to have a reasonable knowledge of the law and [courts] determine good faith in this context by considering whether a reasonably well

trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005) (internal citation and quotation omitted). An officer does not act in good faith if he relies "on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (internal quotations and citation omitted). And that is what we have here.

In *Gonzales*, the district court held that the defendant's status as a convicted felon and the fact that he had a gun magazine in his car did not establish probable cause to search his home and the good faith exception did not apply. 399 F.3d at 1228. The Government appealed the ruling on the good faith exception only. *Id.* The Tenth Circuit affirmed, holding that the good faith exception did not apply to the search of the defendant's home because "there were no facts explaining how the address was linked to [the defendant], the vehicle or the suspected criminal activity, or why the officer thought the items to be seized would be located at the residence." *Id.* at 1230. The only attempt to make this connection was "the detective's assertion that in his experience, 'firearm [sic] are often kept at the residence.'" *Id.*

The connection here is even more tenuous than the lack of connection in the *Gonzales* affidavit, which the Tenth Circuit found to be insufficient. The Court would expect a reasonable police officer to review the warrant and affidavit and ask why there would be probable cause to search Mr. Williams's home when he was suspected of using a fake badge once at a different location. As discussed above, the affidavit does not set forth facts that additional evidence of the crime or other illegal items will be in Mr. Williams's home. The affidavit is entirely devoid of facts linking Mr. Williams's house to the crime of impersonating an officer. Instead, only two paragraphs of the affidavit [Dkt. 41-3 at 4 (¶ 4), 18 (¶ 23)] state that Officer Heidlage believes evidence will be found at the location to be searched; and those two paragraphs are not based on any facts to support that conclusion. Those two paragraphs

No. 24-cr-336

arrive at the conclusion based solely on Officer Heidlage's suspicions, beliefs, or conclusions, without providing the facts to support the veracity, reliability, or basis of his knowledge for those conclusions. *Chambers*, 822 F.3d at 1311. Because the affidavit is devoid of facts establishing a nexus between the suspected criminal activity and Mr. Williams's home, the executing officer's reliance on the search warrant was unreasonable. Mr. Williams's motion [Dkt. 41] is granted and the evidence seized from his home must be suppressed.

DATED this 30th day of December 2024.

JOHN D. RUSSELL
*United States District Judge*